# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO AT CLEVELAND

In Re:

ROBERT G. TISCHLER
JESSICA M. TISCHLER AKA JESSICA
VALLEJO AKA JESSICA VALLEJO-
MCCANN AKA JESSICA MCCANN

                                    Debtors.

CASE NO. 14-16525-pmc

CHAPTER 7

JUDGE Pat E Morgenstern-Clarren

MOTION OF U.S. BANK NATIONAL
ASSOCIATION FOR RELIEF FROM STAY
AND ABANDONMENT

3649 ANTISDALE AVE, CLEVELAND
HEIGHTS, OH 44118

U.S. Bank National Association, (the "Movant") moves this Court, under §§ 361, 362, 363 and other sections of Title 11 of the United States Code, and under Federal Rules of Bankruptcy Procedure 4001 and 6007, and under Local Bankruptcy Rule 4001-1 for an order conditioning, modifying or dissolving the automatic stay imposed by Bankruptcy Code § 362 and for abandonment of property under Bankruptcy Code § 554.

## MEMORANDUM IN SUPPORT

1.      The Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2). The venue of this case and this Motion is proper under 28 U.S.C. §§ 1408 and 1409.

2.      On November 2, 2010, the Debtor Robert Tischler obtained a loan from Fifth Third Mortgage Company the amount of $124,325.00. Such loan was evidenced by a promissory note dated November 2, 2010 (the "Note"), a copy of which is attached as **Exhibit A**.

3.      To secure payment of the Note and performance of the other terms contained in it, the Debtor Robert Tischler executed a Security Agreement in favor of Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for Fifth Third Mortgage Company dated

November 2, 2010 (the "Security Agreement"). The Security Agreement granted a lien on the real property (The "Collateral") owned by the Debtors, located at 3649 Antisdale Ave, Cleveland Heights, OH 44118 and more fully described in the Security Agreement (check one):

        [X]     attached as **Exhibit B**;
                 OR
        [ ]     contained in the Note, attached as Exhibit A.

4.      The lien created by the Security Agreement was duly perfected by (check all that apply):

        [X]    Filing of the Security Agreement in the office of the Cuyahoga County Recorder on November 3, 2010.

        [ ]    Filing of the UCC-1 Financing Statement in the office of _____ on _____ (date)

        [ ]    Notation of the lien on the Certificate of Title.
        [ ]    Other (state with particularity)_____.

A copy of the Security Agreement, UCC-1 Financing Statement, Certificate of Title or other document, as applicable, is attached as Exhibit B. Based on the Debtor's Voluntary Petition the lien is the first lien on the Collateral.

5.      The entity in possession of the original Note as of the date of this motion is U.S. Bank National Association, OWB Vault, 800 Moreland St., Owensboro, KY 42301.

Debtor executed a promissory note secured by a Mortgage. The promissory note is either made payable to Creditor or has been duly endorsed. Creditor directly or through an agent, has possesssion of the promissory note. Creditor is the original mortgagee or beneficiary or the assignee of the Mortgage.

6.      The entity servicing the loan is: U.S. Bank National Association.

7.    The Note was transferred, as evidenced by the following:

a)  If the Collateral is real estate:

   1.  Under Uniform Commercial Code § 3-203(a) as applicable under state law in
       effect where the property is located, from the original lender:

   [ ] N/A.

   OR

   [X] By endorsement on the Note, payable to:
   U.S. Bank National Association.
   **The endorsement of Firth Third Mortgage Company was signed by
   Vice President, Joyce Johnson. Under O.R.C. § 1303.23(A), a
   negotiation is "effective even if it is obtained in any of the following
   manners: (1)From an infant, a corporation exceeding its powers, or
   any other person without capacity; (2) By fraud, duress or mistake of
   any kind; (3) As part of an illegal transaction; (4) In breach of duty."
   So, even if Ms. Johnson did not have the proper authority to do so, the
   negotiation she made is effective.**

   **Further, Under O.R.C. § 1303.36(A), unless the authenticity of, and
   authority to make a signature on an instrument is specifically denied
   in a pleading, it is admitted. Should no party in this case file a
   responsive pleading to the within Motion in which they deny the
   authenticity or authority to make the endorsements, the signature on
   the endorsements should be admitted.**

   **Finally, pursuant to Federal Rule of Evidence 902, as made applicable
   by Federal Rule of Bankruptcy Procedure 9017, "{e}xtrinsic evidence
   of authenticity as a condition precedent to admissibility is not
   required with respect to the following: (9) commercial paper,
   signatures thereon, and documents relating thereto the extent
   provided by general commercial law." This applies to promissory
   notes, as discussed by the 6th Circuit Court of Appeals, which stated
   that such evidence is "self-authenticating" in the case of In re Cook,
   457 F. 3d 561,at 566.**

   AND

   [X] By blank endorsement on the Note.

   OR

[ ] By allonge attached to the Note, payable to:
_____.
**An allonge is an endorsement of a note, pursuant to O.R.C. §1303.24(A)(2), which states that to determine if a signature is made on an instrument, "a paper affixed to the instrument is a part of the instrument". Said allonge is affixed to the Note in the within case.**

[ ] By blank allonge, attached to the Note.

OR

[ ] The Note is not endorsed to the Movant, or is not endorsed in blank with an allegation that the Movant is in possession of the original Note. The factual and legal basis upon which the Movant is entitled to bring this motion is (explain with particularity and attach supporting documentation:

_____
_____
_____

OR

[ ] By endorsement on the Note or by allonge attached to the Note, through a power of attorney. If this box is checked, a copy of the power of attorney is attached as Exhibit _____. Explain why it provides Movant the authority to endorse the Note:

_____
_____
_____

2. Under Uniform Commercial Code § 3-203(a) as applicable under state law in effect where the property is located, from <the first transferree> to _____. **by allonge attached to the note from _____ to _____.**

3. A Court has already determined that Movant has the ability to enforce the Note with a judgment dated <INSERT DATE OF JUDGMENT> in <INSERT NAME OF COURT>. A copy of the judgment is attached as Exhibit _____.

4. Other (explain): **The Movant is in possession of the original note. As such, they are entitled to enforce the note under O.R.C. § 1303.31(A) (1) and (2) as either a "holder" or as a "non-holder in possession of the instrument who has the rights of a holder".**

5.

b) If the Collateral is not real estate (check one):

[X] N/A.

OR

[ ] From the original lender to <FIRST TRANSFEREE> by <STATE METHOD OR DOCUMENT EFFECTING TRANSFER> [ADD ADDITIONAL TRANSFER SECTIONS AS APPROPRIATE. THE LAST TRANSFEREE MUST BE THE MOVANT.]

8.     The Security Agreement was transferred as follows:

[ ] N/A.

OR

[X] From the original lender, mortgagee, or mortgagee's nominee on June 26, 2013 to U.S. Bank National Association. The transfer is evidenced by the Assignment of Mortgage attached to this Motion as **Exhibit C.**

9.     The 2016 value of the Collateral is $104,900.00. This valuation is based on the Broker's Price Opinion dated October 24, 2016, attached as **Exhibit D.**

10.     As of October 17, 2016, there is currently due and owing on the Note the outstanding principal balance of $116,481.08, plus interest accruing thereon at the rate of 5.2500% per annum [$16.75 per day] from December 1, 2014, as described in more detail on the worksheet. The total provided in this paragraph cannot be relied upon as a payoff quotation.

11.     The amount due and owing on the Note as set forth in paragraph 10 does not include a credit for the sum held in a suspense account by the Movant. The amount of the credit is $502.59.

12.     Other parties known to have an interest in the Collateral besides the debtors, the Movant, and the trustee are (check all that apply):

[ ] N/A.

[ ] The Cuyahoga County Treasurer, for real estate taxes in the amount of

_____.

[   <CO-OWNERS, IF APPLICABLE, STATE NAME>.

[X] Portfolio Recovery Assoc (debt buyer for GE Capital Retail
Bank/Care Credit) may claim an interest in said by way of a 2011
Judgment Lien in the amount of $3,216.00.

13.     The Movant is entitled to relief from the automatic stay under Bankruptcy Code § 362(d)

for these reason(s) (check all that apply):

[ ] Debtor has failed to provide adequate protection for the lien held by the
Movant for these reasons (explain):_____.

[ ] Debtor has failed to keep the Collateral insured as required by the
Security Agreement.

[ ] Debtor has failed to keep current the real estate taxes owed on the
Collateral.

[X] Debtor has failed to make periodic payments to Movant for the
months of January 2015 through October 2016, which unpaid payments
are in the aggregate amount of $27,154.48 (which includes a suspense
amount of $502.59) through October 17, 2016. If any months come due
and owing, they too shall be incurred. The total provided in this paragraph
cannot be relied upon as a reinstatement quotation.

[X] Debtors have no equity in the Collateral, because Collateral is valued
at $104,900.00, and including the Movant's lien, there are liens in an
aggregate amount of $142,185.55 on the Collateral.

[ ] Other cause (set forth with specificity): _____.

14.     Movant has completed the worksheet, attached as **Exhibit E**.

15.     Movant is entitled to an order directing the trustee to abandon the Collateral under 11

U.S.C. § 554(b) for these reasons (check all that apply):

[ ] The collateral is burdensome to the estate because: _____

_____

[X] The Collateral is of inconsequential value and benefit to the estate

because upon liquidation of the Collateral no proceeds will remain for the benefit of the estate.

WHEREFORE, Movant prays for an Order from the Court:

a) granting Movant relief from the automatic stay of Bankruptcy Code § 362 to permit Movant to proceed under applicable nonbankruptcy law; AND

b) authorizing and directing the Chapter 7 Trustee to abandon the Collateral under Bankruptcy Code § 554.

Respectfully Submitted,

/s/ STEVEN H. PATTERSON

Steven H. Patterson (0073452)
Attorney for Movant
Reisenfeld & Associates, LPA-LLC
3962 Red Bank Road
Cincinnati, OH 45227
voice: (513) 322-7000
facsimile: (513) 322-7099
e-mail: ohbk@rslegal.com

## CERTIFICATE OF SERVICE

I certify that on the __29th__ of __NOVEMBER__, 2016, a true and correct copy of U.S. Bank National Association's Motion for Relief from Stay and Abandonment was served:

Via the Court's electronic case filing system on these entities and individuals who are listed on the Court's Electronic Mail Notice List:

> Marc E. Dann, Debtor`s Counsel
> mdann@dannlaw.com
> Via ECF Mail
>
> Waldemar J. Wojcik, Bankruptcy Trustee
> wwojcik@epitrustee.com
> Via ECF  Mail
>
> U.S. Trustee
> (Registered address)@usdoj.gov
> Via ECF Mail

And by Regular U.S. Mail, postage prepaid on:

> Robert G. Tischler, Debtor
> 3649 Antisdale Avenue
> Cleveland, OH 44118
>
> Jessica M. Tischler
> aka Jessica Vallejo
> aka Jessica Vallejo-McCann
> aka Jessica McCann, Debtor
> 3649 Antisdale Avenue
> Cleveland, OH 44118
>
> Portfolio Recovery Assoc
> 120 Corporate Blvd Ste 1
> Norfolk, VA  23502

/s/ STEVEN H. PATTERSON

Steven H. Patterson



**Multistate**

# NOTE

FHA Case No.

November 02, 2010
[Date]

3649 Antisdale Ave
Cleveland Heights, OH  44118
[Property Address]

### 1. PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means Fifth Third Mortgage Company

and its successors and assigns.

### 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of One Hundred Twenty Four Thousand Three Hundred Twenty Five And Zero/100

Dollars (U.S. $ 124,325.00               ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of Five and one quarter percent (          5.250 %) per year until the full amount of principal has been paid.

### 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

### 4. MANNER OF PAYMENT

   **(A) Time**

Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on January 01          , 2011          . Any principal and interest remaining on the first day of December          , 2040          , will be due on that date, which is called the "Maturity Date."

   **(B) Place**

Payment shall be made at P.O. Box 630170, Cincinnati, OH  45263                    or at such place as Lender may designate in writing by notice to Borrower.

   **(C) Amount**

Each monthly payment of principal and interest will be in the amount of U.S. $ 686.53                    . This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

   **(D) Allonge to this Note for payment adjustments**

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box]

☐ Graduated Payment Allonge   ☐ Growing Equity Allonge   ☐ Other [specify]

FHA Multistate Fixed Rate Note
VMP ®
Wolters Kluwer Financial Services



10/95
VMP1H (0809)
Page 1 of 3



## 5. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

## 6. BORROWER'S FAILURE TO PAY

### (A) Late Charge for Overdue Payments

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of  Four                              percent (           4.000 %) of the overdue amount of each payment.

### (B) Default

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

### (C) Payment of Costs and Expenses

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

## 7. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

FHA Multistate Fixed Rate Note
VMP ®
Wolters Kluwer Financial Services

10/95
VMP1R (0839)
Page 2 of 3

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____ (Seal)          _____ (Seal)
Robert Tischler        -Borrower                                 -Borrower

_____ (Seal)          _____ (Seal)
                       -Borrower                                 -Borrower

_____ (Seal)          _____ (Seal)
                       -Borrower                                 -Borrower

_____ (Seal)          _____ (Seal)
                       -Borrower                                 -Borrower

FHA Multistate Fixed Rate Note
VMP ®
Wolters Kluwer Financial Services

10/95
VMP1R (0809)
Page 3 of 3

WITHOUT RECOURSE
PAY TO THE ORDER OF

FIFTH THIRD MORTGAGE COMPANY

BY: _____
    Stephen Johnson, SVP


WITHOUT RECOURSE
PAY TO THE ORDER OF

US BANK NATIONAL ASSOCIATION
FIFTH THIRD MORTGAGE COMPANY
BY _____
    JOYCE JOHNSON
    Vice President

Pay to the order of
_____

Without Recourse
U.S. Bank National Association
_____
Teresa Bulver
Vice President

# EXHIBIT B

3



CUYAHOGA COUNTY RECORDER
LILLIAN J GREENE - 14
MORT 11/3/2010 3:16:27 PM
## 201011030714

Return To:
Fifth Third Mortgage Company
5001 Kingsley DR, MD: 1MOCBQ, Cincinnati, OH 45227

—————————— [Space Above This Line For Recording Data] ——————————

State of Ohio

## OPEN-END MORTGAGE

FHA Case No.

MIN

THIS MORTGAGE ("Security Instrument") is given on November 02, 2010
The Mortgagor is Robert Tischler, an unmarried man

whose current mailing address is 15278 Prospect, Strongsville, OH 44149

("Borrower"). This Security Instrument is given to Mortgage Electronic Registration Systems, Inc.
("MERS"), (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns), as
mortgagee. MERS is organized and existing under the laws of Delaware, and has an address and telephone
number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS. Fifth Third Mortgage
Company

FHA Open-End Mortgage with MERS-OH
VMP ®
Wolters Kluwer Financial Services

Form 4/96 Amended 1/02
VMP4N(OH) (0902)
Page 1 of 11

*R-T*

("Lender") is organized and existing under the laws of the state of Ohio
and has an address of 5001 Kingsley DR, MD: 1MOCBQ, Cincinnati, OH 45227
. Borrower owes Lender the principal sum of
One Hundred Twenty Four Thousand Three Hundred Twenty Five And Zero/100
Dollars (U.S. $124,325.00                                    ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"),
which provides for monthly payments, with the full debt, if not paid earlier, due and payable on December
01, 2040                      . This Security Instrument secures to Lender: (a) the repayment of the debt
evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the
payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security
Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument
and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as
nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the
following described property located in Cuyahoga                                    County, Ohio:
See Attached

Parcel ID Number: 683-18-060                          which has the address of
3649 Antisdale Ave                                                              [Street]
Cleveland Heights                        [City], Ohio 44118              [Zip Code]
("Property Address");

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements,
appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be
covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the
"Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by
Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS, (as nominee for
Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including,
but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender
including, but not limited to, releasing or canceling this Security Instrument.

FHA Open-End Mortgage with MERS-OH                          Form 4/96 Amended 1/02
VMP ®                                                                          VMP4N(OH) (0902)
Wolters Kluwer Financial Services                                          Page 2 of 11

*P-T*

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:

UNIFORM COVENANTS.

1.   **Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

2.   **Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 *et seq.* and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

FHA Open-End Mortgage with MERS-OH
VMP ®
Wolters Kluwer Financial Services

Form 4/96 Amended 1/02
VMP4N(OH) (0902)
Page 3 of 11

3. **Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

_First_, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

_Second_, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

_Third_, to interest due under the Note;

_Fourth_, to amortization of the principal of the Note; and

_Fifth_, to late charges due under the Note.

4. **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall

FHA Open-End Mortgage with MERS-OH
VMP ®
Wolters Kluwer Financial Services

Form 4/96 Amended 1/02
VMP4N(OH) (0902)
Page 4 of 11

also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

    6.   **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

    7.   **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

    If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

    Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

    Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

    8.   **Fees.** Lender may collect fees and charges authorized by the Secretary.

---

FHA Open-End Mortgage with MERS-OH
VMP ®
Wolters Kluwer Financial Services

Form 4/96 Amended 1/02
VMP4N(OH) (0902)
Page 5 of 11

P-1

**9. Grounds for Acceleration of Debt.**

**(a) Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

    (i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

    (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

**(b) Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

    (i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

    (ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

**(c) No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

**(d) Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

**(e) Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender

FHA Open-End Mortgage with MERS-OH
VMP ®
Wolters Kluwer Financial Services

Form 4/96 Amended 1/02
VMP4N(OH) (0902)
Page 6 of 11

P7

has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

FHA Open-End Mortgage with MERS-OH
VMP ®
Wolters Kluwer Financial Services

Form 4/96 Amended 1/02
VMP4N(OH) (0902)
Page 7 of 11

R-1

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure. If Lender requires immediate payment in full under Paragraph 9, Lender may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, costs of title evidence.**

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 *et seq.*) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell

FHA Open-End Mortgage with MERS-OH
VMP ®
Wolters Kluwer Financial Services

Form 4/96 Amended 1/02
VMP4N(OH) (0902)
Page 8 of 11

RT

the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

19. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

20. **Advances to Protect Security.** This Security Instrument shall secure the unpaid balance of advances made by Lender, with respect to the Property, for the payment of taxes, assessments, insurance premiums and costs incurred for the protection of the Property.

21. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

| | | |
|---|---|---|
| ☐ Condominium Rider | ☐ Growing Equity Rider | ☐ Other [specify] |
| ☐ Planned Unit Development Rider | ☐ Graduated Payment Rider | Tax Exempt Rider |

FHA Open-End Mortgage with MERS-OH
VMP ®
Wolters Kluwer Financial Services

Form 4/96 Amended 1/02
VMP4N(OH) (0902)
Page 9 of 11

*R.1*

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____        _____ (Seal)
                                        Robert Tischler                 -Borrower

_____        _____ (Seal)
                                                                         -Borrower

_____ (Seal) _____ (Seal)
                       -Borrower                                         -Borrower

_____ (Seal) _____ (Seal)
                       -Borrower                                         -Borrower

_____ (Seal) _____ (Seal)
                       -Borrower                                         -Borrower

FHA Open-End Mortgage with MERS-OH                    Form 4/96 Amended 1/02
VMP ®                                                    VMP4N(OH) (0902)
Wolters Kluwer Financial Services                        Page 10 of 11

**STATE OF OHIO,** Cuyahoga             **County ss:**

This instrument was acknowledged before me this 2nd      day of November, 2010      , by
Robert Tischler   , an Unmarried Man

_Mary C Knauss_
Notary Public

This instrument was prepared by:
Fifth Third Mortgage Company

My Commission Expires:

MARY C. KNAUSS
Notary Public, State of Ohio
Cuyahoga County
My Commission Expires Jan. 14, 2013

---

FHA Open-End Mortgage with MERS-OH
VMP ®
Wolters Kluwer Financial Services

Form 4/96 Amended 1/02
VMP4N(OH) (0902)
Page 11 of 11

## TAX EXEMPT FINANCING RIDER TO SECURITY INSTRUMENT

THIS TAX-EXEMPT FINANCING RIDER is made this __2nd day__ of __November__ 2010 and is incorporated into and shall be deemed to amend and supplement the Mortgage or Security Deed ("Security Instrument") of the same date given by the undersigned ("Mortgagor") to secure Mortgagor's Note ("Note") to Fifth Third Mortgage Company ("Lender") of the same date and covering the property described in the Security Instrument (the "Property") and located at:

3649 Antisdale Ave, Cleveland Heights, OH 44118

(Property Address)

In addition to the covenants and agreements made in the Security Instrument, Mortgagor and Lender further covenant and agree as follows:

Lender, or such of its successors or assigns as may by separate instrument assume responsibility for assuring compliance by the Mortgagor with the provisions of this Tax-Exempt Financing Rider, may require immediate payment in full of all sums secured by the Security Instrument if:

(a) all or part of the Property is sold or otherwise transferred by Mortgagor to a purchaser or other transferee:

(i) who cannot reasonably be expected to occupy the Property as a principal residence within a reasonable time after the sale or transfer, all as provided in Sections 143 (c) and (i)(2) of the Internal Revenue Code; or

(ii) who has had a present ownership interest in a principal residence during any part of the three-year period ending on the date of the sale or transfer, all as provided in Sections 143 (d) and (i)(2) of the Internal Revenue Code (except that "100 percent" shall be substituted for "95 percent or more" where the latter appears in Section 143 (d) (1); or

(iii) at an acquisition cost which is greater than 90 percent of the average area purchase price (greater than 110 percent for targeted area residences), all as provided in Section 143(e) and (i)(2) of the Internal Revenue Code; or

(iv) who has a gross family income in excess of the applicable percentage of applicable median family income, as provided in Section 143 (f) and (i)(2) of the Internal Revenue Code; or

(b) Mortgagor fails to occupy the Property described in the Security Instrument without the prior written consent of the Mortgagee or its successors or assigns described at the beginning of this Tax-Exempt Financing Rider; or

(c) Mortgagor omits or misrepresents a fact that is material with respect to the provisions of Section 143 of the Internal Revenue Code of 1986 in an application for the loan secured by the Security Instrument.

References are to the Internal Revenue Code as amended and in effect on the date of issuance of the Bonds, the proceeds of which will be used to finance the purchase of the Security Instrument and are deemed to include the implementing regulations.

IN WITNESS WHEREOF, the Borrower ("Mortgagor") has executed this Tax-Exempt Financing Rider on this 2nd day November (month) of 2010 (year).

Signature _____        Signature _____

Printed  Robert Tischler                  Printed _____

STATE OF OHIO

COUNTY OF _Cuyahoga_

On this _2_ day of _November_ (month), _2010_ (year), before me, a Notary Public within and for said County and State, personally appeared _Robert Tischler_ to me known to be the persons(s) described in and who, being by me first duly sworn, executed the foregoing Tax-Exempt Financing Rider, and acknowledged, deposed and said that he/she/they executed the same as his/her/their free act and deed and stated that the information and certifications contained therein are true and correct.

_____
Notary Public

MARY C. KNAUSS
Notary Public, State of Ohio
Cuyahoga County

(SEAL)

My Commission Expires: _____        **My Commission Expires Jan. 14, 2013**

This instrument was prepared by: _____

Address: _____

Situated in the City of Cleveland Heights, County of Cuyahoga and State of Ohio:And known as being part of Sublot No. 31 in the Wyldwood Heights Allotment of part of Original Euclid Township Lot Nos. 56 and 57 in Tract No. 1 as shown by the recorded plat in Volume 33 of Maps, Page 16 of Cuyahoga County Records and bounded and described as follows:Beginning on the Northerly line of Antisdale Avenue at its point of intersection with the Easterly line of said Sublot No. 31;Thence Westerly along said Northerly line of Antisdale Avenue 40 feet to a point and principal place of beginning;Thence Northerly on a line parallel with and distant 40 feet Westerly from the Easterly line of said Sublot No. 31 a distance of 167.51 feet to a point;Thence Easterly on a line parallel with the Northerly line of Antisdale Avenue, a distance of 40 feet to a point in the Easterly line of said Sublot No. 31;Thence Southerly on the Easterly line of said Sublot No. 31 a distance of 167.51 feet to a point in the Northerly line of Antisdale Avenue;Thence Westerly along the Northerly line of Antisdale Avenue a distance of 40 feet to the principal place of beginning, be the same more or less, but subject to all legal highways.

Permanent Parcel No. 683-18-060

# EXHIBIT C

CUYAHOGA COUNTY
OFFICE OF FISCAL OFFICER - 1
RELS 7/8/2013 11:42:47 AM
**201307080417**

_____ Space above for Recorder's use _____
## ASSIGNMENT OF MORTGAGE



For good and valuable consideration, the sufficiency of which is hereby acknowledged, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR FIFTH THIRD MORTGAGE COMPANY, ITS SUCCESSORS AND ASSIGNS, by these presents does convey, grant, bargain, sell, assign, transfer and set over to: U.S. BANK NATIONAL ASSOCIATION, 4801 FREDERICA STREET, OWENSBORO, KY 42301 0000, the described Mortgage, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon. Said Mortgage for $124,325.00 is recorded in the State of OHIO, County of CUYAHOGA Official Records, dated NOVEMBER 02, 2010 and recorded on NOVEMBER 03, 2010, as Instrument No. 201011030714, in VOLUME# ---, at Page No. ---.
Original Mortgagor: ROBERT TISCHLER, AN UNMARRIED MAN. Original Mortgagee: FIFTH THIRD MORTGAGE COMPANY. PARCEL #██████████
Date: JUNE 26, 2013
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR FIFTH THIRD MORTGAGE COMPANY, ITS SUCCESSORS AND ASSIGNS

By: _____
Kim Kintop, Assistant Secretary

State of     WISCONSIN          }
County of    MILWAUKEE          } ss.

On JUNE 26, 2013 , before me, Dorothy Mae Hawley, a Notary Public, personally appeared Kim Kintop , who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of WISCONSIN that the foregoing paragraph is true and correct.
Witness my hand and official seal.

_____
(Notary Name): Dorothy Mae Hawley
Commission Expires: 08/28/2016
Commission No:██████████

PREPARED BY: U.S. Bank Home Mortgage, 809 S. 60th Street, Suite 210 West Allis, WI 53214
       MARY J IRWIN

Recording Requested By: U.S. BANK HOME MORTGAGE

And When Recorded Mail To: U.S. Bank Home Mortgage, 809 S. 60th Street, Suite 210, West Allis, WI 53214
       ATTN: MARY J. IRWIN  JA



DOROTHY MAE HAWLEY
NOTARY
PUBLIC
STATE OF WISCONSIN

 

## EXHIBIT D

### Source Exterior BPO

| Property Address: | | | 3649 Antisdale Avenue, CLEVELAND, OH 44118 | | | |
|---|---|---|---|---|---|---|
| Borrower | Robert Tischler | Inspection Date | 10/22/2016 | Effective Date | 10/24/2016 | |
| APN | 683-18-060 | Loan # | ▉▉▉▉ | Order ID | ▉▉▉▉ | |
| Company | Hannibal Smith | | Name | | Hannibal Smith | |
| Phone | ▉▉▉▉ | Fax | | Email | hanntsmith@gmail.com | |
| Address | 17825 East Park CLEVELAND OH 44119 | | Distance from the Subject | | 5-10 Miles | |

## I. General Conditions

| Property Type | SFR |
|---|---|
| Occupancy | Unknown |
| # Of Units | 1 |
| Data Source | MLS |
| Property Condition | Average |
| HOA | No |
| HOA Fees | $ |
| HOA Assoc. Name | |
| Land Value | $20600 |
| Assessed Value | $39380 |
| Annual Property Tax | $4348 |
| Annual Appreciation | $0 |
| Phone | |
| Fees Include | |
| Monthly Rental Value | $1100 |



### Subject Description

THE SUBJECT IS A 2 STORY COLONIAL STYLE DWELLING LOCATED IN A DENSELY POPULATED SUBURB NEAR CLEVELAND OHIO. THE SUBJECT APPEARS TO BE STRUCTURALLY SOUND AND IN AVERAGE CONDITION.

### Repairs

| Category | Cost | | Category | Cost |
|---|---|---|---|---|
| Exterior Paint | $0 | | Foundation | $0 |
| Siding / Trim Repair | $0 | | Fencing | $0 |
| Exterior Doors | $0 | | Landscaping | $0 |
| Windows | $0 | | Pool | $0 |
| Garage | $0 | | Other | $0 |
| Roof / Gutters | $0 | | Other | $0 |
| Fire Damage | $0 | | Other | $0 |
| **Total Estimated Exterior Repairs** | | | $0 | |

### Subject Condition and Repair Comments

NO REPAIRS NEEDED.

## II. Subject Sales and Listing History

| Currently Listed? | No | By: | | // | |
|---|---|---|---|---|---|
| List Date | Orig List Price | | Current List Price | MLS# | |
| | $ | | $0 | | |

### Prior History (36 Month)

| Original List Price | Original List Date | DOM | Date Listed | Date Sold | List Price | Sale Price | Notes |
|---|---|---|---|---|---|---|---|
| | | | | | $ | $ | |
| | | | | | $ | $ | |
| | | | | | $ | $ | |
| | | | | | | | |

### Analysis of Current and Prior Listing History:

NA

14-16525-pmc    Doc 69    FILED 11/29/16    ENTERED 11/29/16 13:39:00    Page 28 of 38

## III. Neighborhood Market Data

| Location | Suburban | Local Economy is | Stable | Housing Supply is | In Balance |
|---|---|---|---|---|---|
| Number of Lisiting is | | Stable | Normal Marketing Time | | 3-6 Months |

| | |
|---|---|
| Total # of Active Listings in the subject's specific MLS district | 23 |
| Total # of Sales in the subject's specific MLS district in the past 12 months | 34 |
| # of REO Sales in the subject's specific MLS district in the past 12 months | 9 |
| # of Boarded Properties on Subject Street | 0 |
| # of Rentals on the market in the subject's specific MLS district | 0 |
| Predominant Occupancy | Owner |

| | | |
|---|---|---|
| Market for this type of property | Remained Stable | |
| Market for this type of property REO% | 30 | |
| Market for this type of property Short Sale % | 5 | |
| Range of Value is this area: | Low: $15000 | High: $160000 |
| Pride of Ownership | Average | |
| Does agent feel there will be a Resale Problem? | No | |
| Reason there will be a Resale Problem: | NONE | |
| Do any environmental issues affect the value of the property? | | |

### Neighborhood Comments

THE SUBJECTS MARKET IS COMPRISED OF MOSTLY SINGLE FAMILY OWNER OCCUPIED DWELLINGS. THE SUBJECTS MARKET HAS AVERAGE APPEAL AND DEMAND. SUPPLY AND DEMAND APPEAR TO BE IN BALANCE WITH NORMAL MARKETING TIME BEING ANYWHERE FROM 0-120 DAYS TYPICALLY. THE SUBJECTS MARKET HAS BEEN IMPACTED BY REOS SHORT SALES AND FORECLOSURES. THE SUBJECTS MARKET IS NOT REO DRIVEN. THE SUBJECTS MARKET HAS AVERAGE OWNERSHIP PRIDE. THE SUBJECT IS CLOSE TO RECREATION, SHOPPING, SCHOOLS, POLICE AND FIRE.

## IV. Marketing Strategy

| Value | | 90-120 Day Value | Repaired Value | 30 Day Value |
|---|---|---|---|---|
| | Suggested List Price | $104,900 | $104,900 | $89900 |
| | Probable Sales Price | $98,000 | $98,000 | $85,000 |

### Comments Regarding Pricing Strategy

THE SALES COMPARISON APPROACH WAS USED TO ARRIVE AT THE FINAL ESTIMATE OF VALUE. ADJUSTMENTS MADE FOR SIGNIFICANT DIFFERENCES IN PRIMARY AND SECONDARY FEATURES.

### Unique Property Conditions

*The attached Broker Price Opinion (BPO) has been completed outside of The Uniform Standards of Professional Appraisal Practice (USPAP). The BPO is an evaluation tool and is not considered an appraisal of the market value of the property - it is an opinion of the probable sales price. SingleSource completes BPO requests for property listing, REO analysis, loan due diligence, modifications, etc to aid our servicing customers. SingleSource BPO reports are not eligible or appropriate for loan origination purposes.*

# V. Current Listings

| | Subject | Listing #1 | Listing #2 | Listing #3 |
|---|---|---|---|---|
| |  |  |  |  |
| **Street Address** | 3649 Antisdale Avenue | 3615 Grosvenor Rd | 1905 Powell Ave | 3749 Bendemeer Rd |
| **City** | CLEVELAND | Cleveland Hts | Cleveland Hts | Cleveland Hts |
| **State** | OH | OH | OH | OH |
| **Zip Code** | 44118 | 44118 | 44118 | 44118 |
| **Miles to Subject** | | 0.08 | 0.26 | 0.37 |
| **Community Name** | CLEVELAND HEIGHTS | CLEVELAND HEIGHTS | CLEVELAND HEIGHTS | CLEVELAND HEIGHTS |
| **Data Source** | MLS | MLS | MLS | MLS |
| **MLS Number** | NA | 3792398 | 3823587 | 3808052 |
| **Original List Date** | | 3/22/2016 | 7/1/2016 | 5/12/2016 |
| **Original List Price** | | 103000 | 105000 | 112000 |
| **Current List Price** | 0 | 91000 | 105000 | 112000 |
| **Listing Type** | Other | Arms Length | Arms Length | Arms Length |
| **Days On Market** | NA | 215 | 114 | 164 |
| **Year Built** | 1936 | 1940 | 1946 | 1948 |
| **Condition** | Average | Average | Average | Average |
| **View** | Residential | Residential | Residential | Residential |
| **Style/Design** | COLONIAL | COLONIAL | COLONIAL | COLONIAL |
| **# of Units** | 1 | 1 | 1 | 1 |
| **Gross Living Area** | 1602 | 1458 | 1806 | 1492 |
| **Bedrooms** | 4 | 3 | 3 | 3 |
| **Baths/Half Baths** | 1 \| 1 | 2 \| 1 | 1 \| 1 | 1 \| 1 |
| **Basement** | Yes | Yes | Yes | Yes |
| **Basement Finished** | Partial/Finished | Partial/Finished | Partial/Finished | Partial/Finished |
| **Total Room #** | 6 | 6 | 8 | 7 |
| **Garage/Carport** | 2  Detached | 2  Detached | 2  Detached | 2  Detached |
| **Lot Size** | .15  Acres | .10  Acres | .13  Acres | .14  Acres |
| **Other** | NONE | NONE | NONE | NONE |

## Comments on Listing Comparables

**Listing # 1**

THIS COMP IS EQUAL TO THE SUBJECT WITH AN ADJUSTMENT FOR SQFT OF +$2000 AND FULL BATH OF -$2500, SIMILAR UTILITY AND APPEAL.

**Listing # 2**

THIS COMP IS EQUAL TO THE SUBJECT WITH AN ADJUSTMENT FOR SQFT OF -$3000. SIMILAR UTILITY AND APPEAL.

**Listing # 3**

THIS COMP IS EQUAL TO THE SUBJECT WITH AN ADJUSTMENT FOR SQFT OF -$1500. SIMILAR UTILITY AND APPEAL.

## VI. Recent Sales

| Sale Comparables | | Subject | Sale #1 | Sale #2 | Sale #3 |
|---|---|---|---|---|---|
| | |  |  |  |  |
| | Street Address | 3649 Antisdale Avenue | 3663 Blanche Ave | 3559 Grosvenor Rd | 3732 Berkeley Rd |
| | City | CLEVELAND | Cleveland Hts | Cleveland | Cleveland |
| | State | OH | OH | OH | OH |
| | Zip Code | 44118 | 44118 | 44118 | 44118 |
| | Miles to Subject | | 0.15 | 0.17 | 0.28 |
| | Community Name | CLEVELAND HEIGHTS | CLEVELAND HEIGHTS | CLEVELAND HEIGHTS | CLEVELAND HEIGHTS |
| | Data Source | MLS | MLS | MLS | MLS |
| | MLS Number | NA | 3745363 | 3779570 | 3777528 |
| | Original List Price | $ | $99900 | $105000 | $119900 |
| | Original List Date | | 9/6/2015 | 2/5/2016 | 2/1/2016 |
| | List Price at Sale | $ | $99900 | $100000 | $98500 |
| | Sale Price | $ | $93,500 | $100,000 | $92,000 |
| | Closing Date | | 5/10/2016 | 8/25/2016 | 7/25/2016 |
| | Type of Financing | | Conv | FHA | CASH |
| | Type of Sale | | Arms Length | Arms Length | Arms Length |
| | Days On Market | NA | 247 | 202 | 175 |
| | Year Built | 1936 | 1940 | 1940 | 1941 |
| | Condition | Average | Average | Average | Average |
| | View | Residential | Residential | Residential | Residential |
| | Style/Design | COLONIAL | COLONIAL | COLONIAL | COLONIAL |
| | # of Units | 1 | 1 | 1 | 1 |
| | Gross Living Area | 1602 | 1806 | 1579 | 1352 |
| | Bedrooms | 4 | 4 | 4 | 4 |
| | Baths/Half Baths | 1 \| 1 | 2 \| 1 | 1 \| 1 | 1 \| 1 |
| | Basement | Yes | Yes | Yes | Yes |
| | Basement Finished | Partial/Finished | Partial/Finished | Partial/Finished | Full/Unfinished |
| | Total Room # | 6 | 8 | 7 | 7 |
| | Garage/Carport | 2  Detached | 2  Detached | 2  Detached | 2  Detached |
| | Lot Size | .15  Acres | .12  Acres | .11  Acres | .12  Acres |
| | Other | NONE | NONE | NONE | NONE |
| | Overall Adjustment | | $-5,500 | $0 | $6,000 |
| | Adjusted Value | | $88,000 | $100,000 | $98,000 |

### Comments on Sale Comparables

**Sale # 1**
THIS COMP IS SIMILAR TO THE SUBJECT WITH AN ADJUSTMENT FOR SQFT OF -$3000 AND FULL BATH OF -$2500. SIMILAR UTILITY AND APPEAL.

**Sale # 2**
THIS COMP IS EQUAL TO THE SUBJECT WITH NO NECESSARY ADJUSTMENTS. SIMILAR UTILITY AND APPEAL.

**Sale # 3**
THIS COMP IS SIMILAR TO THE SUBJECT WITH AN ADJUSTMENT FOR SQFT OF +$3500 AND FINISHED BASEMENT OF -$2500. SIMILAR UTILITY AND APPEAL.

## VII. Subject Photograph Addendum



| | |
|---|---|
| Subject Front | **Subject Front** |
| Subject Street | **Subject Street** |
| Subject Address | **Subject Address** |

## VIII. Current Listings Photograph Addendum



**Current Listing 1**

3615 Grosvenor Rd
Cleveland Hts, OH44118
Orig List Date: 3/22/2016
List Price: $91000
Sq. Ft.: 1458
Miles to Subject 0.08



**Current Listing 2**

1905 Powell Ave
Cleveland Hts,OH44118
Orig List Date: 7/1/2016
List Price: $105000
Sq. Ft.: 1806
Miles to Subject 0.26



**Current Listing 3**

3749 Bendemeer Rd
Cleveland Hts, OH44118
Orig List Date: 5/12/2016
List Price: $112000
Sq. Ft.: 1492
Miles to Subject 0.37

# IX. Recent Sales Photograph Addendum



**Recent Sale 1**

3663 Blanche Ave
Cleveland Hts, OH44118
Closing Date: 5/10/2016
Sale Price: $93,500
Sq. Ft.: 1806
Miles to Subject 0.15



**Recent Sale 2**

3559 Grosvenor Rd
Cleveland,    OH 44118
Closing Date: 8/25/2016
Sale Price: $100,000
Sq. Ft.: 1579
Miles to Subject 0.17



**Recent Sale 3**

3732 Berkeley Rd
Cleveland,    OH 44118
Closing Date: 7/25/2016
Sale Price: $92,000
Sq. Ft.: 1352
Miles to Subject 0.28

# XI. Map



Subject Property: 3649 Antisdale Avenue

| Comparable Listings | Distance | Recent Sales | Distance |
|---|---|---|---|
| 3615 Grosvenor Rd | 0.08mi. | ① 3683 Blanche Ave | 0.15mi. |
| 1905 Powell Ave | 0.26mi. | ② 3569 Grosvenor Rd | 0.17mi. |
| 3749 Bendemeer Rd | 0.37mi. | ③ 3732 Berkeley Rd | 0.28mi. |

**EXHIBIT E**

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF OHIO AT CLEVELAND**

In Re:                                          CASE NO. 14-16525-pmc

ROBERT G. TISCHLER                     CHAPTER 7
JESSICA M. TISCHLER AKA JESSICA
VALLEJO AKA JESSICA VALLEJO-       JUDGE Pat E Morgenstern-Clarren
MCCANN AKA JESSICA MCCANN

                                   Debtors.    U.S. BANK NATIONAL ASSOCIATION'S
                                                RELIEF FROM STAY AND ABANDONMENT
                                                WORKSHEET

                                                3649 ANTISDALE AVE, CLEVELAND
                                                HEIGHTS, OH 44118

**I.  LOAN DATA**
   A.  IDENTIFICATION OF COLLATERAL (check all that apply):

   [X ] Real Estate - 3649 Antisdale Ave, Cleveland Heights, OH 44118

   [X ] Principal Residence of Debtors

   [ ] Other

   [ ] Personal Property – Describe.  Include VIN or other identification

   [ ] Other Property – Describe.

   B.  2016 VALUE OF COLLATERAL: $104,900

   C.  SOURCE OF COLLATERAL VALUATION:  Broker's Price Opinion dated October 24, 2016

   D.  ORIGINAL LENDER: Fifth Third Mortgage Company

   E.  ENTITY ENTITLED TO ENFORCE THE NOTE:  U.S. Bank National Association

   F.  CURRENT LOAN SERVICER: U.S. Bank National Association

   G.  DATE OF LOAN:  November 2, 2010

   H.  ORIGINAL PRINCIPAL AMOUNT DUE UNDER NOTE:  $124,325.00

   I.  ORIGINAL INTEREST RATE ON NOTE:  5.250%

   J.  CURRENT INTEREST RATE:  5.250%

   K.  ORIGINAL MONTHLY PAYMENT AMOUNT (principal and interest only for mortgage loans):  $686.53

L.   CURRENT MONTHLY PAYMENT AMOUNT: $1,267.21

M.   THE CURRENT MONTHLY PAYMENT AMOUNT LISTED ABOVE:

[ ] Includes an escrow amount of $_____ for real estate taxes.

[ ] Includes an escrow amount of $_____ for property insurance.

[X] Includes an escrow amount of $580.68 for taxes and insurance.

[ ] Does not include any escrow amount.

N.   DATE LAST PAYMENT RECEIVED:  11/18/2015

O.   AMOUNT OF LAST PAYMENT RECEIVED:  $1,240.46

P.   AMOUNT HELD IN SUSPENSE ACCOUNT:  $502.59

Q.   NUMBER OF PAYMENTS PAST DUE:  22

## II. AMOUNT ALLEGED TO BE DUE AS OF OCTOBER 17, 2016

|     | Description of Charge | Total Amount of Charges | Number of Charges Incurred | Dates Charges Incurred |
|-----|-----------------------|-------------------------|----------------------------|------------------------|
| A.  | PRINCIPAL | $116,481.08 | - | - |
| B.  | INTEREST | $ 11,479.27 | - | - |
| C.  | TAXES (escrow advance for taxes and insurance) | $ 11,460.90 | - | - |
| D.  | INSURANCE | See Line C | - | - |
| E.  | LATE FEES | | | |
| F.  | NON-SUFFICIENT FUNDS FEES | | | |
| G.  | PAY-BY-PHONE FEES | | | |
| H.  | BROKER PRICE OPINION | | | |
| I.  | FORCE-PLACED INSURANCE: PMI/MIP | $      50.89 | | |
| J.  | PROPERTY INSPECTIONS | | | |
| K.  | OTHER CHARGES (describe in detail and state contractual basis for recovering the amount from the debtor) | | | |

TOTAL DEBT:                                              $_____139,472.14
LESS AMOUNT HELD IN SUSPENSE:             ($_____502.59)
TOTAL DUE AS OF DATE MOTION IS FILED:    $_____138,969.55 *

* This total cannot be relied upon as a payoff quotation

This worksheet was prepared by:

/s/ STEVEN H. PATTERSON
_____

Steven H. Patterson (0073452)
Reisenfeld & Associates, LPA-LLC
3962 Red Bank Road
Cincinnati, OH 45227
voice: (513) 322-7000
facsimile: (513) 322-7099
e-mail: ohbk@rslegal.com